OPINION OF THE COURT
Paul E. Cheeseman, J.
This case is one of first impression in the courts of the State. It is also a case of great importance as it relates to the plaintiff, Dunbar Elliot (Dell) Gatlin, a 15-year-old, mentally retarded infant.
*170 We are asked to decide whether the Commissioner of Education (hereinafter Commissioner) correctly applied New York’s residency statute (Education Law § 3202 [4] [b]) in denying Dell resident status in Edmeston, New York, and thereby denying him tuition-free education.
Dell Catlin is a mentally retarded infant, who was placed in a "family home at board” almost immediately after birth by his natural parents, Daniel and Dundeen Catlin. Pursuant to his parents’ agreement with Samuel and Elizabeth Condes, Dell lives in a family home run by the Condes family in Edmeston, New York.
Part of this agreement is that the Gatlins provide support payments on a regular basis to the Condes. The Gatlins have delegated the responsibility for the. daily care of Dell to the Condes although they remain involved in some decisions that are made for Dell.
It is uncontroverted that Dell’s social, civic, religious and family life is in Edmeston. In 1978, Dell entered the Edmeston Central School system. At that time the Gatlins resided in the Bedford Central School District located in Mt. Kisco, New York. The Bedford Central School District determined on their own that they were "legally responsible” for the tuition at Edmeston and paid the same through the 1985 school year.
In 1985, the Gatlins moved from Bedford, New York, to Nantucket, Massachusetts. The move prompted the Bedford Central School District to discontinue payments on Dell’s behalf. Edmeston immediately notified the Gatlins that unless arrangements were made for the payment of Dell’s tuition, Edmeston would refuse to permit Dell’s further attendance at school. Edmeston’s position throughout this litigation has been that it is not required to provide Dell with free public schooling because he is not a resident of Edmeston.
The Bedford Central School District also contacted the appropriate school district in Massachusetts to have it assume responsibility for Dell’s tuition. Massachusetts declined. The Gatlins then appealed Edmeston’s decision to the Commissioner who held that Dell was not a resident of Edmeston, finding that there was a presumption that a child resided with his parents. The Commissioner held that presumption was rebuttable but that Dell had failed to rebut this presumption.
The Commissioner in interpreting Education Law § 3202 (4) (b) ruled that Dell’s actual and only residence is not Edmeston and that Dell may continue attendance at Edmeston only *171 upon the terms and conditions set by the Board of Education, which included the payment of tuition. In so ruling, the Commissioner stated: “In this instance, it is not disputed that petitioner continues to be financially responsible for his son’s support and maintenance. Although the operator of the family home at board has responsibility for the daily care of the child, that responsibility has been delegated by petitioner, who is free to terminate the delegation at any time. It must also be noted that the record indicates that petitioner and his wife have taken an active role in meeting with the committee of the handicapped of the Bedford school district to plan their son’s educational program. Accordingly, there is no basis upon which I could conclude that the residence of the child should not be deemed to be that of his parents.”
The Gatlins instituted an action in United States District Court, Northern District, of New York, seeking to have the statute declared unconstitutional as applied. The court (Howard Munson, J.) granted the Gatlins partial summary judgment by ruling that the residency requirements of the Education Law violated the Equal Protection Clause of the Fourteenth Amendment of the US Constitution. (42 USC § 1983; Martinez v Bynum, 461 US 321 [1983].) The Second Circuit Court of Appeals, in an appeal of the District Court decision, remanded the case to District Court with instructions to retain jurisdiction pending an interpretation of Education Law § 3202 (4) (b) by New York State courts. (Catlin v Ambach, 820 F2d 588.)
In February 1988 the Gatlins commenced an action for declaratory judgment seeking this court’s interpretation of section 3202 (4) (b) of the Education Law as it pertains to Dell.
On February 29, 1988, the Edmeston Central School District brought an action against the Gatlins in Otsego County Supreme Court for tuition for the 1985-1986 and 1986-1987 school years. Edmeston thereafter brought a motion for summary judgment. The Gatlins cross-moved to consolidate that action with this and to change the venue of the Otsego County action to Albany County. The parties agreed to consolidate and change venue to Albany County.
The Gatlins have moved for summary judgment in this action. Edmeston opposes that motion and has cross-moved for summary judgment. It also seeks to supplement its complaint in the action originally brought in Otsego County to include a claim for tuition for the 1987-1988 school year.
*172 The Commissioner opposes the Gatlins’ motion for summary judgment and seeks judgment in favor of the Commissioner of Education.
The State law issue presented in this case is whether or not the defendant Commissioner’s interpretation of Education Law § 3202 (4) (b) was correct in its application to the plaintiffs in this action.
That statute provides as follows: "Children cared for in free family homes and children cared for in family homes at board, when such family homes shall be the actual and only residence of such children and when such children are not supported and maintained at the expense of a social services district or of a state department or agency, shall be deemed residents of the school district in which such family home is located.”
While we agree with the Commissioner that a child’s residence is presumed to be that of his parents, we do not agree with the Commissioner that in this case that presumption must be rebutted. We believe that a clear reading of section 3202 (4) (b) created a class of children who are not presumed to reside with their parents. In that class are children who are cared for in a family home at board which is not supported and maintained at the expense of a social services district or of a State department or agency, and who have such family home as their actual and only residence. These children are residents of the family home at board and not residents of their parents’ home. This is a class of children into which the infant, Dell, may be properly placed.
The Commissioner has created an exception which is not in the statute. The statute does not say a parent must irrevocably relinquish his parental authority. It simply says "actual and only” residence.
The fact that Dell’s entire life has been spent with the Condes satisfied a simple reading of "actual and only”. We are not confronted with a child in foster care with vacations or visits with a natural parent in an attempt to eventually reunite the separated family. In Dell’s situation, which to the Gatlins is a great tragedy, there has been a reasoned decision to place Dell with the Condes who are experienced in dealing with children affected by Down’s syndrome, such as Dell, on a full-time basis.
*173 The Commissioner’s finding that by the Catlins financially contributing to Dell’s support that Dell is in residence with his parents directly, contradicts the express language of section 3202 (4) (b).
The statute specifically refers to children cared for at board. The American Heritage Dictionary published by Houghton Mofflin Company defines a boarder as "one who pays a homeowner a stipulated sum for regular meals or meals and lodging.” Now accepting that the Catlins have honored their obligation under New York statute and case law to support their infant son, we are at a loss to say that this acknowledgement of their financial obligations created a residency with the Catlins. If such were the case, then what of a noncustodial nonresident parent who provides support for an infant living in this State? Is that infant a resident of the noncustodial parent’s State simply because it is the nonresident parent who provides for the infant’s financial support or is the child a resident where he actually lives? We find no basis for the Commissioner’s determination. We agree with the Second Circuit that the Commissioner’s interpretation traveled beyond the terms of the statute to define residence. (Catlin v Ambach, supra, at 591.)
Lastly, we note that the respondents’ position is diametrically opposed to the position that the State of New York proposed in Rabinowitz v New Jersey State Bd. of Educ. (550 F Supp 481).
In Rabinowitz (supra) the child suffering from the Down’s syndrome resided in New Jersey after being placed in a home just like that of the Condes immediately after birth. The Rabinowitz child’s parents lived in New York. In Rabinowitz (supra) New York insisted that since the child lived in New Jersey, she was a resident of New Jersey, and not New York. The District Court did not rule if New York must reimburse New Jersey, just that New Jersey had the obligation to provide the education since that was the residence of the infant (see also, Plyler v Doe, 457 US 202 [1982]).
Accordingly, plaintiffs’ motion for summary judgment declaring Dell a resident of Edmeston for the purposes of tuition-free education is granted. All other motions are denied in all respects.